# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

MARY J. MERKEL,

    Plaintiff,

*v*.                                        Case No. 07-cv-11171

COMMISSIONER OF               DISTRICT JUDGE DAVID. M. LAWSON
SOCIAL SECURITY,                MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.     RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E. D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation is issued only to address the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for disability insurance benefits. This matter is currently before the Court on Defendant's motion for summary judgment. (Dkt. 9, 12.)

Plaintiff was 53 years of age at the time of the administrative hearing. (Tr. at 46, 338.) She has a high school education. (Tr. at 55.) Plaintiff's relevant work history includes approximately 4 years work as a cashier in drug stores, and 5 years work as an assembler for auto parts suppliers. (Tr. at 60.)

Plaintiff filed the instant claim on November 5, 2003, alleging that she became unable to work on July 31, 2002. (Tr. at 46-48.) The claim was denied at the initial administrative stages. (Tr. at 33-38.) In denying Plaintiff's claim, the Defendant Commissioner considered emphysema and an affective disorder as possible bases of disability. (*Id.*) Plaintiff filed a Request for Hearing, and on December 13, 2005, Plaintiff appeared before Administrative Law Judge ("ALJ") E. Patrick Golden, who considered the case *de novo*. In a decision dated April 12, 2006, the ALJ found that Plaintiff was not disabled. (Tr. at 15-24.) Plaintiff requested a review of this decision on April 19, 2006. (Tr. at 12-14.)

The ALJ's decision became the final decision of the Commissioner on February 23, 2007, when, after the review of additional exhibits[2] (Tr. at 334-337), the Appeals Council denied

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final

Plaintiff's request for review. (Tr. at 5-8.) On March 19, 2007, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

**B.     Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case *de novo* . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way,

---

decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

**C.     Governing Law**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142,

107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

A claimant must meet all five parts of the test set forth in 20 C.F.R. § 404.1520 in order to receive disability benefits from Social Security. The test is as follows:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three: If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four: If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five: If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Preslar*, 14 F.3d at 1110. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

### D. Administrative Record

Evidence contained in the administrative record and presented to the ALJ indicates that between July, 2003 and August, 2005, Plaintiff was seen at Macomb County Community Mental Health, at the request of one of her physicians. (Tr. at 141-193, 305-326.) In January, 2004, Plaintiff underwent a physical examination conducted at the request of the Disability Determination Service by Dr. Patel. (Tr. at 128-130.) Three days later, Plaintiff underwent a psychiatric examination conducted at the request of the Disability Determination Service by Dr. Pope. (Tr. at 131-133.) Between March and December 2004, Plaintiff was seen by Dr. Policherla, M.D. (Tr. at 219-231.) Plaintiff was also seen by physicians at St. John's Health (Tr. at 196-218, 272-284.) In November, 2004, Plaintiff was hospitalized for three days at St. John Macomb Hospital. (Tr. at 233-269.)

### E. ALJ's Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found, at step one, that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. at 20.) At step two, the ALJ found that Plaintiff's impairments were

"severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 21.) At step four, after concluding that the Plaintiff had the residual functional capacity for a range of light exertion work, the ALJ found that Plaintiff could return to her previous work as a cashier or assembler. (Tr. at 22-24.) As a result, the ALJ did not proceed to step five of the Commissioner's disability analysis.

## F. Review of ALJ's Determination

### 1. Legal Standards

In reaching his determination of nondisability, the ALJ concluded that plaintiff was capable of undertaking light work. Light work is defined by the Commissioner as follows:

> Light Work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

> The Commissioner has also ruled that:
>
> The major difference between sedentary and light work is that most light jobs -- particularly those at the unskilled level of complexity -- require a person to be standing or walking most of the workday. Another important difference is that the frequent lifting or carrying of objects weighing up to 10 pounds (which is required for the full range of light work) implies that the worker is able to do occasional bending of the stooping type; i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist. Unlike unskilled sedentary work, many unskilled light jobs do not entail fine use of the fingers. Rather, they require gross use of the hands to grasp, hold and turn objects.

SSR 83-14.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

**2.      Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

As mentioned, the ALJ concluded that Plaintiff had the ability to return to her prior work. This finding ended the ALJ's disability inquiry because Plaintiff could not make out a prima facie showing of disability as he could return to his previous work. Step Four "necessarily entails a comparison of the physical demands of the claimant's past relevant work with [his] present mental and physical capacity." *Veal v. Bowen*, 833 F.2d 693, 697 (6th Cir. 1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The Commissioner's regulations state:

> If you can do your previous work (your usual work or other applicable past work), we will determine that you are not disabled. However, if your residual functional capacity is not enough to enable you to do any of your previous work, we must still decide if you can do any other work. . . .

20 C.F.R. § 404.1561.

In *Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074 (6th Cir. 1987), the Sixth Circuit clarified the standard of proof necessary for a showing that a social security benefits claimant is unable to return to former work:

> Rather, the Act requires that he show that his impairments are so severe that he is "unable to do his previous work. . . ." 42 U.S.C. § 423(d)(2)(A). He must prove "an inability to return to his former <u>type</u> of work and not just to his former job." *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986) (emphasis in original). *See also Gray v. Heckler*, 760 F.2d 369, 273 (1st Cir. 1985); *De Loatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983); *Jock*, 651 F.2d at 135.

*Studaway*, 815 F.2d at 1076.

The Court affirmed the denial of benefits concluding: "Because the relevant inquiry is whether *Studaway* could return to his past type of work rather than his past job, we are compelled to affirm." (*Id.*)

In determining the level of exertion required by prior work, the ALJ may normally look to the job descriptions contained in the <u>Dictionary of Occupational Titles</u>. *De Loatche v. Heckler*, 715 F.2d 148 (4th Cir. 1983). However, the job categories of the Dictionary may be overcome by evidence demonstrating that the particular duties of plaintiff's prior work were not those envisioned by the framers of the Dictionary. *Carter v. Sec'y of Health & Human Servs.*, 834 F.2d 97 (6th Cir. 1987). In documents supporting her application for benefits, Plaintiff described her cashier and the assembly jobs as work which involved standing and walking, with the assembler job requiring the occasional lifting of up to 20 lbs., and more frequent lifting of 10 lbs. or less, and the cashier job requiring the lifting of 10 lbs or less. (Tr. at 61-66.)

Although there is evidence to the contrary (Tr. at 139, 253,) under the standards outlined above, I conclude that substantial evidence supports the ALJ's findings. During her testimony, Plaintiff discussed Parkinson's Disease and spells of dizziness. (Tr. at 340-343.) However, the evidence of record indicates only the presence of only mild tremors. (Tr. at 219, 223). In December of 2004, Dr. Policherla, Plaintiff's treating neurologist, reported that she was "walking twice daily and doing great." (Tr. at 220.) An EEG examination performed by the Doctor was normal, as were

9

physical and neurological examinations. (Tr. at 229-231.) Although Plaintiff was hospitalized in November of 2004, the cause of her symptoms was determined to be dehydration, and no evidence of Parkinson's Disease was found at the time of her admission. (Tr. at 233, 247.) Examination of her extremities conducted at the time of her admission also appears essentially normal. (Tr. at 252.) In addition, physicians at St John's Health on more than one occasion also noted improvement in Plaintiff's condition. (Tr. at 203, 207, 276.)

As to Plaintiff's claim of disabling mental impairment, the Commissioner has promulgated a special technique to ensure that all evidence needed for the evaluation of such a claim is obtained and evaluated. This technique was designed to work in conjunction with the sequential evaluation process set out for the evaluation of physical impairments. *See* 20 C.F.R. §§ 404.1520a, 416.920a. Congress laid the foundation for making disability determinations when mental impairments are involved in 42 U.S.C. § 421(h), which provides:

> An initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

20 C.F.R. § 404.1520a explains in detail the special procedure, and requires the completion of "a standard document outlining the steps of this procedure." 20 C.F.R. § 404.1520a(d). The regulation further requires the standard document to be completed and signed by a medical consultant at the initial and reconsideration levels, but provides other options at the administrative law judge hearing level. *Id*. Under this procedure, the Commissioner must first make clinical findings, (i.e. the "A" criteria), as to whether the claimant has a medically determinable mental disorder specified in one of eight diagnostic categories defined in the regulations. *See* 20 C.F.R.

Pt. 404. Subpt. P, App. 1, § 12.00A. Then the Commissioner must measure the severity of any mental disorder; that is, its impact on the applicant's ability to work. This is assessed in terms of a prescribed list of functional restrictions associated with mental disorders, (i.e. the "B" criteria).

The "B" criteria identify four areas which are considered essential to the ability to work. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The first area is "activities of daily living." This area requires the Commissioner to determine the claimant's ability to clean, shop, cook, take public transportation, maintain a residence and pay bills. (*Id*.). Under the second criterion, "social functioning," the Commissioner must determine whether the claimant can interact appropriately and communicate effectively and clearly with others. (*Id*.). The third function, "concentration, persistence and pace," refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. (*Id*.). The final area, that of "deterioration or decompensation in work or work-like settings," refers to the claimant's ability to tolerate increased mental demands associated with competitive work. (*Id*.).

If the first two "B" criteria receive ratings of "none" or "slight," the third a rating of "never" or "seldom," and the fourth a rating of "never," the Commissioner will conclude that the mental impairment is not severe, and therefore cannot serve as the basis for a finding of disability. 20 C.F.R. §§ 404.1520a(c)(1) and 404.1521. If, on the other hand, the "B" criteria indicate that the mental impairment is severe, the Commissioner must then decide whether it meets or equals a listed mental disorder. 20 C.F.R. § 1520a(c)(2). The Commissioner will determine that the claimant is disabled if the mental impairment is a listed mental disorder and at least two of the "B" criteria have been met. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02, *et. seq*. If the severe mental impairment does not meet a listed mental disorder, the Commissioner must perform a residual functional capacity assessment to determine whether the claimant can perform some jobs notwithstanding his

mental impairment. 20 C.F.R. 404.1520a(c)(3), 416.920a(c)(3). The findings of a psychologist are relevant in establishing the existence and severity of a mental impairment, and a psychologist's evaluation of the disabling nature of a mental impairment need not be given less weight than that of a psychiatrist. *Crum v. Sullivan*, 921 F.2d 642 (6th Cir. 1990).

In this case, as to the "A" criteria, the ALJ discussed affective disorders and anxiety related disorders. (*See* Tr. at 21.) Turning to the "B" criteria, the ALJ found that Plaintiff's mental impairment led to mild restrictions in daily living, mild difficulties in maintaining social function, moderate deficiencies in concentration but no episodes of deterioration in work-like settings. (*Id.*) Based on these findings, the ALJ undertook the residual functional analysis earlier described.

In order to find a "marked" limitation in daily activities, or a "marked" difficulty in maintaining social functioning, a plaintiff must show that the mental impairment "seriously interfere[s] with the ability to function independently, appropriately and effectively." *Foster v. Bowen*, 853 F.2d 483, 491 (6th Cir. 1988). In *Foster*, 853 F.2d at 488, Plaintiff was diagnosed with a dysthymic disorder and depressed mood. The denial of Plaintiff's claim for disability was upheld based on Plaintiff's testimony that she was able to cook, wash dishes, and do her laundry.

In *Vaughn v. Sec'y of Health & Human Servs.*, No. 89-2259, 1990 WL 120967 (6th Cir. Mich., August 21, 1990), the denial of Plaintiff's claim for benefits, based at least in part on mental impairments, was upheld where the record showed that although Plaintiff had very low self-esteem and some mental retardation, he was nonetheless generally logical, cooperative, oriented, and capable of engaging in logical and abstract thought.

In *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 150 (6th Cir. 1990), the denial of Plaintiff's claim for disability benefits based on mental impairments, was upheld where the record showed that Plaintiff washed dishes, cooked, shopped, read, watched television, and drove.

12

In *Hogg v. Sullivan*, 987 F.2d 328, 333 (6th Cir. 1992), Plaintiff was treated for depression and argued that this condition served as a proper basis for a finding of disability. The denial of this claim was upheld as the record indicated that Plaintiff was able to care for herself and her son, maintain a regular schedule of daily activities, attend church, undertake vocational training, visit relatives, and drive.

In *Cornette v. Sec'y of Health & Human Servs.*, 869 F.2d 260 (6th Cir. 1988), the ALJ found that plaintiff's condition met both the A and B criteria of Listed Impairment 12.04. At issue was the date of disability. In that case, there was testimony that plaintiff's wife had to assist him in bathing and putting on his clothes. The plaintiff twice tried to commit suicide, and plaintiff did nothing but lie in bed and watch television. *Cornette*, 869 F.2d at 264.

In *Lankford v. Sullivan*, 942 F.2d 301 (6th Cir. 1991), the court reversed a finding of nondisability and held that plaintiff there met both the A and B criteria of Listed Mental Impairment 12.08. In *Lankford*, there was abundant evidence of repeated suicide attempts, violent behavior and repeated lengthy hospitalizations for treatment of mental disorders.

The facts of this case, I suggest, are much closer to those of *Foster, Young, Vaughn,* and *Hogg*. *Cornette* and *Lankford*, on the other hand, stand in contrast to the instant case. There is in this record no indication that mental impairments rendered Plaintiff with "no useful ability to follow work rules, deal with the public, interact with supervisors, cope with work stress or relate predictably in social situations[,]" as was the case in *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1068 (6th Cir. 1992). Although Plaintiff experienced difficulties at a younger age (Tr. at 167,) as well as marital difficulties, (Tr. at 156,) by the latter months of 2004, Macomb County Community Mental Health Progress Notes on more than one occasion describe Plaintiff as "psychiatrically stable" and in good spirits. (Tr. at 309, 311, 315.) Moreover, in August 2005,

Plaintiff voluntarily ended therapy sessions, stating her satisfaction with a lesser level of services. (Tr. at 305.) I further suggest that Plaintiff's reported activities (Tr. at 69, 71-72,) fail to support the findings required by the Commissioner's mental impairment evaluation technique.

The contrary arguments raised by counsel for Plaintiff, I suggest, fail to carry the day. In particular, I suggest the ALJ did not err in discounting an opinion expressed by one of Plaintiff's counselors. (Tr. at 174-175.) Plaintiff also points to the findings of a state agency psychologist. (Tr. at 104-105.) Although counsel for Plaintiff correctly notes that the ALJ did not adopt those findings, even if he had, I suggest that these findings were not sufficient to have directed a conclusion of "disabled" under the Commissioner's technique, as the psychologist failed to make any "markedly limited" findings.

A vocational expert ("VE") testified at the administrative hearing. In response to questions from the ALJ, the VE testified that Plaintiff's prior work was light in exertion, and not precluded by mental impairments which still allowed for the completion of simple tasks. (Tr. at 347-348.) In light of the medical evidence discussed above, I suggest that the VE's opinion is consistent with the findings of treating physicians and mental health professionals, and can properly be considered substantial evidence supporting the ALJ's findings. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

The ALJ failed to find Plaintiff's complaints of disabling limitations fully credible. The ALJ acknowledged that Plaintiff had an impairment that could cause limitations; however, he found that the severe and debilitating nature of Plaintiff's alleged limitations were not fully credible and provided reasons for this conclusion. The issue is whether the ALJ's credibility determinations are

14

supported by substantial evidence. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at **3 (6th Cir. Ohio Feb. 11, 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Under this standard, for the reasons set forth above, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

Accordingly, I suggest that the record contains substantial evidence supporting the ALJ's decision and, therefore, after review of the record, I conclude that the ALJ's decision, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts." *Mullen*, 800 F.2d at 545.

### III. **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*,

931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  |  |
|---|---|
| Dated: January 4, 2008 | s/ *Charles E. Binder*<br>CHARLES E. BINDER<br>United States Magistrate Judge |

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet Parker, Kenneth Laritz, and the Commissioner of Social Security, and served on U.S. District Judge Lawson in the traditional manner.

Date: January 4, 2008    By    s/Patricia T. Morris
                                 Law Clerk to Magistrate Judge Binder